UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR 04-99-02 S
:
DAVID BATISTA :

**REPORT AND RECOMMENDATION**
**(REDACTED)**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant David Batista ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a hearing was conducted on June 14, 2007. At the conclusion of the hearing, the Court found that Defendant had violated the terms of supervised release. For the reasons stated herein, I recommend that he be sentenced to five months of home detention to be followed by a term of supervised release for thirty-one months with the special conditions stated in this Report and Recommendation.

**Background**

On June 2, 2005, Defendant appeared before United States District Judge William E. Smith after having pled guilty to possession with intent to distribute a detectable amount of marijuana and being a felon in possession of a firearm. He was sentenced to nine months incarceration to be followed by three years of supervised release and ordered to pay a special assessment of $200. As special conditions of his supervised release, Defendant was ordered to participate in substance abuse

treatment as approved by the probation office and to perform twenty hours of community service for every week he was not employed full-time and five hours for every week he was employed full-time.

Supervised release commenced on November 7, 2005, with an expiration date of November 6, 2008. Supervised Release Violation Report (the "Report") at 1. On or about May 29, 2007, U.S. Probation Officer David S. Borrelli ("Mr. Borrelli") initiated a Petition for Warrant for Offender under Supervision (the "Petition"), alleging that Defendant had violated one standard condition of his supervised release. See Petition at 1. In response to the Petition, Judge Smith ordered the issuance of a warrant. See id. at 2.

**The Alleged Violation**

The Report alleges that Defendant has violated the standard condition of supervision that while on probation he is not to commit another federal, state, or local crime and that he is not to illegally possess a controlled substance. See Report at 1. Specifically, the Report alleges that on March 27, 2006, Defendant possessed eighty pounds of marijuana. See id. In support of this allegation, the Report cites Defendant's arrest on March 27, 2006, his March 30, 2007, admission, and his April 26, 2007, guilty plea in Taunton, Massachusetts, Superior Court.

**Travel**

On May 29, 2007, Judge Smith ordered the issuance of a warrant for Defendant to appear to answer to the Petition. See Petition at 2. The warrant was executed, and Defendant appeared before this Magistrate Judge on June 1, 2007. At that time Defendant was advised of the Petition and of the grounds for the alleged violation. Defendant requested a violation hearing, and a hearing was scheduled for June 14, 2007. The Court released Defendant until his violation hearing on $1000 full surety bail

with home confinement and electronic monitoring.[1] The hearing was held on June 14, and at its conclusion Defendant was ordered detained. On June 22, 2007, the court announced the recommendation contained in this Report and Recommendation and released Defendant on home confinement with electronic monitoring.

**The Violation Hearing**

The Government presented one witness at the violation hearing, Mr. Borrelli. Mr. Borrelli testified to the following facts. On or about March 27, 2006, it was brought to his attention by Assistant United States Attorney Mary Rogers ("AUSA Rogers") and the Drug Enforcement Administration ("DEA") that Defendant had been arrested in Massachusetts for possessing eighty pounds of marijuana. Approximately thirteen months later, Mr. Borrelli learned from Defendant's attorney, Joseph Voccola, that Defendant had "pled out" to a lesser charge. Mr. Borrelli asked Mr. Voccola to have Defendant drop off at the Probation Office documents pertaining to the conviction and the sentence which Defendant had received. Defendant did so within the week.

Mr. Borrelli identified Government Exhibit ("Ex.") #1 as a three page document which Defendant had brought to the Probation Office. The first page of this document bears the heading "COMMONWEALTH OF MASSACHUSETTS SUPERIOR COURT PROBATION CONTRACT." Id. at 1. Immediately beneath the heading are Defendant's name and the date "April 26, 2007." Id. In a box appearing beneath the words "SENTENCE IMPOSED" the following

[1] As a condition of his release, Defendant was permitted to work. He was also allowed to meet with his attorney, attend religious services, and go to medical appointments provided he first obtained permission from his probation officer. Defendant was ordered to be in his home during the hours of 6:00 p.m. through 5:30 a.m. Monday through Friday and during the hours of 12:30 p.m. through 6:00 a.m. on Saturday.

appears: "Unl Ps Cl D int Dist - 4 years probation."[2] Id.

Mr. Borrelli testified that he had a conversation with Defendant on March 30, 2006, in the Probation Office. The conversation concerned Defendant's involvement in the March 27, 2006, incident. Defendant told Mr. Borrelli that he had provided money to an individual and that the individual was going to give the money to another person. After some initial reticence regarding the extent of his knowledge, Defendant acknowledged to Mr. Borrelli that he knew that the transaction involved the purchase of marijuana.

On cross examination, Mr. Borrelli stated that at the time of this conversation he had two documents, a letter from the DEA explaining the circumstances of Defendant's arrest and also "the arrest report by the DEA."[3] Tape of 6/14/07 Hearing. Mr. Borrelli agreed that Defendant never acknowledged possessing eighty pounds of marijuana. He also agreed that Defendant also never indicated a quantity of marijuana. Mr. Borrelli acknowledged that he did not know the amount of money which Defendant had handed to the individual and that there was nothing in the documents which indicated an amount of money.

[REDACTED]

In response to questions concerning Defendant's veracity and his performance while on supervised release, Mr. Borrelli indicated that during the first few months of supervision he had concerns about Defendant. During this period, Mr. Borrelli found it difficult to verify Defendant's work location, his hours of

---

[2] After both sides had rested at the hearing, the Court asked counsel for the Government where on Government Ex. #1 the charge for which Defendant had received probation was identified. AUSA Rogers cited this abbreviation and opined that it meant "unlawful possession of a class D controlled substance with intent to distribute." See Tape of 6/14/07 Hearing.

[3] These documents were not introduced into evidence.

employment, and his employment income. When Mr. Borrelli made a field visit to Defendant's place of employment, he noticed that persons would walk away upon his arrival, causing him to suspect that Defendant was reestablishing old associations. He also questioned how Defendant was able to afford his standard of living. However, Mr. Borrelli agreed that his concerns were based on "pure speculation." Since Defendant began working at Douglas Lumber approximately one year ago, Mr. Borrelli has had no concerns about Defendant's truthfulness, and Defendant's behavior has been good. Mr. Borrelli acknowledged that he was troubled by having to bring the instant violation.

**Finding Re Violation**

The standard of proof to be applied at a revocation of supervised release hearing is a preponderance of the evidence. United States v. Goad, 44 F.3d 580, 585 (7th Cir. 1995). Using that standard, I find that the Government has proven that Defendant violated the terms of his supervised release by committing a crime in the Commonwealth of Massachusetts on or about March 27, 2006. However, the Government has not proven that Defendant possessed eighty pounds of marijuana as alleged in the Petition. In fact, the Government has not proven that Defendant possessed any quantity of marijuana or any other controlled substance. While counsel for the Government offered a possible interpretation of the cryptic abbreviation which appears on Government Ex. #1, the Court finds this document to be less than satisfactory as evidence. It does not state the date of the offense, the statute allegedly violated, the plea entered by Defendant, and whether the probation resulted from that plea. The document is unsigned by a "Justice of the Superior Court" even though a signature line appears immediately beneath the statement that "[t]he Court hereby ORDERS the probationer to adhere to the conditions set forth." Id. Because there is no

statutory citation, the Court is unable to determine the maximum penalty for the offense which is abbreviated as "Unl Ps Cl D int Dist." Id.

The Government has presented only vague information regarding the offense for which Defendant was arrested. This Court should not have to guess what offense Defendant committed in the Commonwealth of Massachusetts as adjudicated by a court of that jurisdiction. The Government has been aware for at least fourteen months of Defendant's arrest in Massachusetts and aware for at least a month that there has been a disposition in that matter. It is not too much to expect that when the Government contends a defendant has violated supervised release or probation by committing a new criminal offense the Government will present a copy of the judgment and conviction (or other satisfactory evidence) which will allow the Court to make a finding as to the particular offense committed and the maximum penalty for that offense. It is also not too much to expect that the Government present sufficient factual information so the Court can gauge the seriousness of the new offense. Here, the Government has failed in both respects.

In short, the Court is unable to determine from the evidence presented the offense which Defendant committed and the maximum possible punishment for that offense. Therefore, the Court cannot find that Defendant has committed a Grade A or Grade B violation. The evidence only supports a finding that Defendant committed a Grade C violation.

**Law**

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum

authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release is three years for Count IV, however, the maximum term of supervised release is life for Count I. A term of three years supervised release has already been imposed for Counts I and IV to run concurrently. Therefore, the term of supervised release for Count I can be extended up to life.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than two years in prison if the offense that resulted in the term of supervised release was a class C or D felony. Here, Defendant was on supervision for class C and D felonies. Therefore, he may not be required to serve more than two years imprisonment upon revocation for each count.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the

maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here life for Count I and three years for Count IV), less any term of imprisonment imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C violation. Pursuant to §7B1.3(a)(2) of the U.S.S.G., upon a finding of a Grade C violation, the court may revoke, extend, or modify supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term

of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. Neither provision applies to this matter.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by

statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release for Count I is life. However, the authorized statutory maximum term of supervised release is three years for Count IV. There has not been any term of imprisonment previously imposed for violations of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation for each count.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of III at the time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of III, an imprisonment range of five to eleven months is warranted.[4]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

**Recommendation Re Sentence**

The Government recommended that Defendant be sentenced to two years imprisonment on Count IV and that he be placed on two additional years of supervised release on Court 1. Defendant, apparently taking note of the Government's recommendation,

---

[4] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

requested that he be placed in home confinement for two years.

The Court is troubled by this case. Separate and apart from the deficiencies in the quality of the evidence presented in support of the violation, the Court is struck by the fact that it is undisputed that Defendant's conduct for at least the last year has been good. Defendant has been steadily employed. He has submitted a letter from his employer which states that Defendant has been "a punctual, diligent employee who has an excellent rapport with both management and fellow employees."[5] Defendant's Ex. B (Letter to Martin, M.J. from Rendine of 6/13/07). The Government apparently has known since March of 2006 of Defendant's arrest in Massachusetts, but took no action to have him violated. [REDACTED]

The Court has determined that Defendant has committed a Grade C violation. The guideline range for a Grade C violation for a defendant with a criminal history category of III is 5-11 months. At this late date, a sentence of incarceration for the violation would be counterproductive. Defendant would lose his employment and go from a being a taxpayer to one who is supported by the taxpayers. He does not appear to pose a risk to the community as the Government saw no need to seek his detention during the fourteen months preceding the filing of the instant Petition.

Accordingly, I recommend that Defendant be sentenced to a term of five (5) months of home detention and that while so

---

[5] Defendant also submitted a letter from the President of the Johnston Town Council, Robert V. Russo. In the letter, Mr. Russo writes that "[t]he Batista family moved into the Town ... approximately one year ago and I have come to know David through his wife Sular Batista." Defendant's Ex. A (Letter to Martin, M.J., from Russo of 6/11/07). Mr. Russo further indicates that Defendant has become involved in the community and opines that "justice would be better served if David were allowed [to] serve any sentence provided to him through means of home confinement." Id.

detained he be allowed to leave his home to work, to attend religious services, and to attend medical and dental appointments. Thereafter, I recommend that Defendant be on a period of supervised release for thirty-one (31) months. As special conditions of that supervised release, I recommend that Defendant be required to participate in and satisfactorily complete a program for the treatment of narcotic addiction or drug or alcohol dependency, which will include testing (up to seventy-two tests per year) for the detection of substance use as approved by the Probation Office. In addition, Defendant shall perform twenty (20) hours of community service for every week not employed on a full-time basis and five (5) hours for every week employed on a full-time basis as directed by the Probation Office. I recommend that this sentence be imposed on Count IV. I recommend that no sentence be imposed on Count I.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to a term of imprisonment for five (5) months and that such term be served in home confinement. I further recommend that thereafter Defendant be on a term of supervised release for thirty-one (31) months with the special conditions stated above.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 22, 2007